**Tarter Krinsky & Drogin LLP**
*Attorneys for Vbar 3, LLC and Caffe Valdino, Inc.*
*Debtors and Debtors-In-Possession*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
smarkowitz@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                                    Chapter 11

Vbar 3, LLC,
                                                          Case No.: 19-10378 (SCC)

                              Debtor.
-------------------------------------------------------------x

In re:

Caffe Valdino, Inc.,                                      Chapter 11

                              Debtor.                     Case No.: 19-10436 (SCC)
-------------------------------------------------------------x


## DEBTORS' JOINT PLAN OF REORGANIZATION DATED MAY 23, 2019

# TABLE OF CONTENTS

**ARTICLE I** ............................................................................................................................. 1

**INTRODUCTION** ................................................................................................................ 1

**ARTICLE II** ........................................................................................................................... 1

**DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION** ...................... 1

    A.   DEFINITIONS ....................................................................................................... 1
    B.   INTERPRETATION, RULES OF CONSTRUCTION, COMPUTATION OF TIME, AND CHOICE OF LAW ...................... 9

**ARTICLE III** .......................................................................................................................... 10

**DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS** ......................... 10

    A.   CLASS 1 – SECURED CLAIMS (ON DECK CAPITAL, INC., SWIFT FINANCIAL, LLC, BFS   CAPITAL, QUICKBRIDGE FUNDING AND AMERICAN EXPRESS NATIONAL BANK) ...................... 11
    B.   CLASS 2 – GENERAL UNSECURED CLAIMS ....................................................... 11
    C.   CLASS 3 - INSIDERS' UNSECURED CLAIMS ...................................................... 11
    D.   CLASS 4 - EQUITY INTEREST HOLDERS ......................................................... 11

**ARTICLE IV** .......................................................................................................................... 11

**TREATMENT OF CLASSES OF CLAIMS, INTERESTS, AND UNCLASSIFIED CLAIMS OR INTERESTS** 11

    A.   UNCLASSIFIED CLAIMS ...................................................................................... 11
        1.  United States Trustee Fees ........................................................................... 11
        2.  Administrative Claims ................................................................................... 12
        3.  Priority Tax Claims ....................................................................................... 13
    B.   TREATMENT OF ALLOWED CLASS 1 SECURED CLAIMS ...................................... 13
    C.   TREATMENT OF ALLOWED CLASS 2 GENERAL UNSECURED CLAIMS .................. 14
    D.   TREATMENT OF CLASS 3 INSIDERS' UNSECURED CLAIMS .................................. 15
    E.   TREATMENT OF CLASS 4 EQUITY INTERESTS .................................................... 15

**ARTICLE V** ............................................................................................................................ 16

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .................. 16

    A.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .................. 16

**ARTICLE VI** .......................................................................................................................... 16

**MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN** .......................... 16

    A.   SUBSTANTIVE OF CONSOLIDATION .................................................................... 16
    B.   SOURCE OF PAYMENTS ...................................................................................... 16
    C.   MANAGEMENT OF REORGANIZED DEBTOR ........................................................ 17

**ARTICLE VII** ........................................................................................................................ 17

**CONDITIONS PRECEDENT TO THE EFFECTIVENESS OF THE PLAN** ...................... 17

**ARTICLE VIII** ....................................................................................................................... 17

**PROCEDURES FOR RESOLVING AND TREATING CLAIMS** ...................................... 17

    A.   RESOLUTION OF DISPUTED CLAIMS .................................................................. 17
    B.   ESTIMATION ...................................................................................................... 17

C.   ALLOWANCE OF DISPUTED CLAIMS ............................................................................ 18

ARTICLE IX ............................................................................................................................... 18

PROVISIONS CONCERNING CAUSES OF ACTION ........................................................ 18

ARTICLE X ................................................................................................................................. 19

PROVISIONS GOVERNING DISTRIBUTIONS ................................................................... 19

A.   DISBURSING AGENT ................................................................................................... 19
B.   UNCLAIMED DISTRIBUTIONS ..................................................................................... 19
C.   PROFESSIONAL FEES AND EXPENSES ......................................................................... 20
D.   ROUNDING ................................................................................................................. 20

ARTICLE XI ............................................................................................................................... 20

PROVISIONS CONCERNING DISCHARGE AND PROPERTY ........................................ 20

A.   DISCHARGE OF ALL CLAIMS ...................................................................................... 20
B.   VESTING OF PROPERTY IN THE REORGANIZED DEBTORS ........................................... 20

ARTICLE XII .............................................................................................................................. 21

"CRAM DOWN" ......................................................................................................................... 21

ARTICLE XIII ............................................................................................................................ 21

RETENTION OF JURISDICTION .......................................................................................... 21

ARTICLE XIV ............................................................................................................................ 22

NOTICES ..................................................................................................................................... 22

ARTICLE XV .............................................................................................................................. 23

MISCELLANEOUS PROVISIONS .......................................................................................... 23

A.   APPLICABLE LAW ...................................................................................................... 23
B.   UNENFORCEABILITY OF PARTICULAR PROVISIONS ..................................................... 23
C.   REVOCATION AND WITHDRAWAL PRIOR TO CONFIRMATION ..................................... 23
D.   AMENDMENT AND MODIFICATION ............................................................................. 24
E.   SUCCESSORS AND ASSIGNS ....................................................................................... 24
F.   BINDING EFFECT OF PLAN .......................................................................................... 24

# ARTICLE I
## INTRODUCTION

Vbar 3, LLC and Caffe Valdino, Inc. (collectively, the "Debtors"), hereby propose the following joint plan of reorganization dated May 23, 2019 (the "Plan") for the resolution of the Debtors' outstanding creditor Claims (as hereinafter defined) and Equity Interests (as hereinafter defined).  Reference is made to the Debtors' joint disclosure statement dated May 23, 2019 (the "Disclosure Statement") for a discussion of the Debtors' history, businesses and results of operations and a summary and analysis of the Plan and certain related matters.

All holders of Claims and Equity Interests entitled to vote to accept or reject the Plan are encouraged to review the Disclosure Statement and the Plan before voting to accept or reject the Plan.  To the extent that the Plan is inconsistent with the Disclosure Statement, the Plan will govern.  No materials other than the Disclosure Statement and exhibits and schedules attached thereto or referenced therein have been approved by the United States Bankruptcy Court for the Southern District of New York for use in soliciting acceptances or rejections of this Plan.

# ARTICLE II
## DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION

### A.  Definitions

In addition to those capitalized terms that are defined in other Articles of the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan.

"**Administrative Claim**" means any cost or expense of administration of the Chapter 11 Case allowed under Section 503(b) of the Bankruptcy Code that is entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the estate of the Debtors, operating the business of

the Debtors, all compensation and reimbursement of expenses of professionals allowed by the Bankruptcy Court under Sections 330, 331 and 503 of the Bankruptcy Code.

**"Allowed Amount"** shall mean the dollar amount of an Allowed Claim.

**"Allowed Claim"** means a Claim against the Debtors to the extent the Claim is allowed pursuant to the Plan, or (a) a proof of such Claim was (i) timely filed; or (ii) deemed timely filed under applicable law or by reason of an order of the Bankruptcy Court; and (b)(i) after the applicable deadlines for filing an objection to the Claim in accordance with the Plan has passed, the Debtors have not filed an objection or any such objection is withdrawn following the expiration of such applicable deadline(s); (ii) the Claim is allowed (but only to the extent allowed) by a Final Order, or (iii) the Claim is a Class 1 or 2 Claim that was Scheduled by the Debtors in accordance with Rule 1007 of the Bankruptcy Rules and not listed as disputed, contingent or unliquidated.  Prior to the time that an objection has been or may be timely filed, for the purposes of this Plan, a Claim shall be considered an Allowed Claim if (a) the Claim has been Scheduled; (b) the amount of the Claim specified in any filed proof of claim equals or is less than the amount of the Claim Scheduled by the Debtors as other than disputed, contingent or unliquidated; (c) the priority of the Claim specified in any filed proof of claim is of an equal or more junior priority than the priority of the Claim Scheduled by the Debtors; and (d) the Claim has not been Scheduled as disputed, contingent or unliquidated.

**"Bankruptcy Code"** means Title 11 of the United States Code, as the same was in effect on the Petition Date, as amended from time to time.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of New York or such other Court as may hereafter be granted jurisdiction over the Chapter 11 Case.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, the local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York, and the guidelines and requirements of the Office of the United States Trustee for the Southern District of New York, as the same may from time to time be in effect and applicable to the Reorganization Case and proceedings therein.

**"Bar Date"** means June 5, 2019, which is the deadline to file proofs of Claim in the Chapter 11 Cases as provided by order of the Bankruptcy Court or any other deadline to file proof of Claims set by the Bankruptcy Court or agreed to by the Debtors.

**"Business Day"** means any day other than a Saturday, Sunday, or a "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

**"Cash"** means lawful currency of the United States and cash equivalents.

**"Chapter 11 Cases"** means the Debtors cases for reorganization under Chapter 11 of the Bankruptcy Code, Case Number 19-10378 (SCC) entitled "In re: Vbar 3, LLC" and Case Number 19-10436 (SCC) entitled "In re: Caffe Valdino, Inc.," now pending in the Bankruptcy Court.

**"Ciotti"** means Enrico Ciotti.

**"Claim"** means a claim against the Debtors or their property as defined in Section 101(5) and construed in Section 102(2) of the Bankruptcy Code.

**"Class"** means a group of Claims or Equity Interests consisting of Claims or interests which are substantially similar to each other as classified pursuant to this Plan.

**"Confirmation"** means entry, within the meaning of Bankruptcy Rules 5003 and 9021, of an order of the Bankruptcy Court confirming this Plan in accordance with the provisions of the Bankruptcy Code.

**"Confirmation Date"** means the date upon which the Confirmation Order is entered in the Bankruptcy Court.

**"Confirmation Hearing"** means the hearing to be held by the Bankruptcy Court to consider confirmation of this Plan.

**"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

**"Debtor(s)"** means "Vbar 3, LLC" and "Caffe Valdino, Inc.," the Debtors-in-Possession in the Chapter 11 Cases.

**"Debtors-in-Possession"** means the Debtors, as debtors-in-possession in the Chapter 11 Cases.

**"Deficiency Amount"** shall mean, with respect to a Claim, the amount, if any, by which the Allowed Amount of the Claim exceeds the amount of such Claimant's Secured Claim.

**"Deficiency Claim"** shall mean any Unsecured Claim against the Debtors representing a Deficiency Amount.

**"Disbursing Agent"** shall mean the Reorganized Debtors.

**"Disclosure Statement"** means the "Debtors' Joint Disclosure Statement to accompany its Plan of Reorganization dated May 23, 2019 (and all annexes attached thereto or referenced therein) which relates to the Plan and that is approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

**"Disputed Claim"** means a Claim or a request for payment of an administrative expense, as the case may be, as to which: (a) a proof of claim or a request for payment of an administrative expense, as the case may be, has been filed with the Court or deemed filed under applicable law or order of the Court; (b) an objection has been timely filed; and (c) such

objection has not been (i) withdrawn, (ii) overruled or denied in whole or part by a Final Order, or (iii) granted in whole or in part by a Final Order.  Prior to the time that an objection has been or may be timely filed, for purposes of this Plan, a Claim shall be considered a Disputed Claim: (i) to the extent and only to the extent the amount of the Claims specified in the proof of claim exceeds the amount of any corresponding Claim listed by the Debtors in their Schedules; (ii) any corresponding Claim listed by the Debtors in their Schedules as disputed, contingent or unliquidated, irrespective of the amount scheduled; or (iii) if no corresponding Claim has been listed by the Debtors in their Schedules.

**"Distribution Dates"** means any Business Day on or after the Effective Date on or by which Distributions of Cash are made pursuant to the Plan.

**"Distributions"** means the payments to creditors and others (e.g., Professional Persons) of Cash pursuant to and required by this Plan.

**"Effective Date"** means the date on which the Confirmation Order becomes a Final Order and all of the conditions set forth in Article VII have been satisfied and/or waived.

**"Equity Interest"** means the rights and interests of a member or shareholder in the Debtors.

**"Equity Interest Holder"** means the holder of an Equity Interest.

**"Estate"** means the estate created in the Chapter 11 Case under Section 541 of the Bankruptcy Code.

**"Executory Contracts"** means all contracts or unexpired leases to which the Debtors are a party and which is executory within the meaning of Section 365 of the Bankruptcy Code.

**"Face Amount"** means, with respect to any Claim, (a) if the holder of such Claim has not timely filed proof thereof with the Bankruptcy Court, the amount, if any, of such Claims

scheduled and not listed as disputed, contingent or unliquidated (b) if the holder of such Claim has timely filed proof thereof with the Bankruptcy Court, and the Debtor has not filed an objection, the amount stated in such proof, or (c) if a Claim has become an Allowed Claim pursuant to a Final Order, the amount of such creditor's Allowed Claim.

**"Final Order"** means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction, as entered on the docket of such court which, not having been reversed, modified, amended, or stayed and the time for seeking review of which by way of appeal, petition for certiorari, motion for reargument and rehearing or other review having expired, and as to which no appeal, petition for certiorari, motion for reargument and rehearing or other review is pending, has become conclusive of all matters adjudicated thereby and is in full force and effect.

**"Governmental Unit"** shall have the meaning set forth at Section 101(27) of the Bankruptcy Code.

**"Insiders"** shall have the meaning as contained in Section 101(31) of the Bankruptcy Code.

**"Intercompany Claim"** means any Claim by a Debtor against any other Debtor.

**"Lien"** means any charge against, or interest in, property to secure payment of a debt or performance of an obligation and includes, without limitation, any judicial lien, security interest, mortgage, deed of trust or statutory lien.

**"Ozalp"** means Burcu Ozalp.

**"Person"** shall have the meaning ascribed to such term in Section 101(41) of the Bankruptcy Code.

**"Plan"** means this Plan of Reorganization, as altered, amended or modified from time to time, and all attachments and exhibits thereto.

"**Prime Rate**" means the Wall Street Journal Eastern Edition United States Prime Rate in effect at the beginning of each compounding period.

**"Priority Claim"** means any Allowed Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, other than (a) an Administrative Claim, and (b) a Priority Tax Claim.

**"Priority Tax Claim"** means a Claim by a Governmental Unit entitled to priority pursuant to any provision of Section 507(a)(8) of the Bankruptcy Code.

**"Pro Rata"** means with respect to the holder of an Allowed Unsecured Claim or Equity Interest of a particular Class, the same proportion that the amount of such Allowed Claim or Equity Interest bears to the aggregate amount of all Allowed Claims or Equity Interests of such Class.

**"Professional"** or **"Professional Person"** means all attorneys, accountants, consultants or other Persons retained under an order of the Court on behalf of the Debtor or the Creditors' Committee in accordance with Section 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered pursuant to Sections 327, 328, 330 and 331 of the Bankruptcy Code.

 **"Reorganized Debtors"** shall mean the Debtors on or after the Effective Date.

**"Scheduled"** means as set forth in the Schedules of Assets and Liabilities.

**"Schedules of Assets and Liabilities"** means the Schedules of Assets and Liabilities and the Statement of Financial Affairs filed by the Debtors as required by Section 521 of the

Bankruptcy Code and the Official Bankruptcy Forms of the Bankruptcy Rules, as the same have been or may be amended from time to time prior to the Effective Date.

**"Secured Claim"** means a Claim that is either (a) secured by a valid perfected and enforceable Lien on the property of the Debtor that is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law, but only to the extent of the value as set forth in an Allowed Claim or as determined by Final Order in accordance with Section 506(a) or 1111(b) of the Bankruptcy Code, of the interest of the claimant in the Debtors' property securing such Claim, or (b) for which the holder asserts a valid setoff under Section 553 of the Bankruptcy Code.  To the extent that the amount claimed by the holder of a Secured Claim exceeds the value of the property securing such Claim, the holder of such Secured Claim shall have an Unsecured Claim equal to the amount of the excess.

**"SH"** means Simple Hospitality, LLC.

**"SME"** means St. Marks Enterprises, Inc. which is currently a chapter 7 debtor in the Bankruptcy Court under Case No. 19-10382 (SCC).

**"SME Trustee"** mean Gregory M. Messer, the Chapter 7 Trustee of SME.

 **"Unsecured Claim"** means a Claim against the Debtors that is not an Administrative Claim, Priority Tax Claim, Priority Claim or Secured Claim.

**"Unsecured Creditor"** means the holder of an Unsecured Claim.

**"Valdino Debtor"** means "Caffe Valdino, Inc.," the Debtor-in-Possession in the Chapter 11 Case No. 19-10436 (SCC).

**"Valdino Filing Date"** means February 12, 2019, the date the Valdino Debtor filed its voluntary Chapter 11 petition with the Bankruptcy Court.

**"Vbar 3 Debtor"** means "Vbar 3, LLC," the Debtor-in-Possession in the Chapter 11 Case No. 19-10378 (SCC).

**"Vbar 3 Filing Date"** means February 10, 2019, the date the Vbar 3 Debtor filed its voluntary Chapter 11 petition with the Bankruptcy Court.

B. <u>**Interpretation, Rules of Construction, Computation of Time, and Choice of Law**</u>

In the event of a conflict between the Plan and the Disclosure Statement, the contents of the Plan shall control over the contents of the Disclosure Statement.  The provisions of the Confirmation Order shall control over the contents of the Plan.

Any term used in the Plan that is not otherwise defined in the Plan either in Article II.A (Definitions) or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules. Without limiting the foregoing, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply. The definitions and rules of construction contained herein shall also apply to the Disclosure Statement and to the exhibits to the Plan except to the extent expressly so stated in the Disclosure Statement or in each particular exhibit to the Plan.

The words "herein", "hereof", "hereto", "hereunder", and others of similar import refer to the Plan as a whole and not to any particular Article, Section, Subsection, or Clause contained in the Plan.  The word "including" shall mean "including, without limitation."

Any reference in the Plan to an existing document or exhibit means such document or exhibit, as it may have been amended, restated, modified, or supplemented as of the Effective Date.

Captions and headings to Articles, Sections, Subsections, and Clauses in the Plan are inserted for convenience of reference only and shall neither constitute a part of the Plan nor in any way affect the interpretation of the provisions hereof.

Whenever from the context it is appropriate, each term stated in either the singular or the plural shall include both the singular and the plural.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

All exhibits to the Plan are incorporated into the Plan, and shall be deemed to be included in the Plan, regardless of when they are filed.

Subject to the provisions of any contract, certificate, bylaws, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with federal law, including the Bankruptcy Code and Bankruptcy Rules.

## ARTICLE III
## DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS

The following is a designation of the Classes of Claims and Equity Interests under the Plan.  Administrative Claims, Priority Tax Claims and statutory fees due to the United States Trustee have not been classified and are excluded from the following Classes in accordance with Section 1123(a)(1) of the Bankruptcy Code.  A Claim or Equity Interest is classified in a particular Class only to the extent the Claim or Equity Interest qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such different Class.

**A.  Class 1 – Secured Claims (On Deck Capital, Inc., Swift Financial, LLC, BFS Capital, Quickbridge Funding and American Express National Bank)**

Class 1 consists of Secured Claims of On Deck Capital, Inc., Swift Financial, LLC, BFS Capital, Quickbridge Funding and American Express National Bank.

**B.  Class 2 – General Unsecured Claims**

Class 2 consists of all Unsecured Claims against the Debtors that are not entitled to priority under Bankruptcy Code §507(a), and that are not classified in any other Class.

**C.  Class 3 - Insiders' Unsecured Claims**

Class 3 consists of the Unsecured Claims of Insiders.

**D.  Class 4 - Equity Interest Holders**

Class 4 consists of the Debtors' Equity Interest Holders.

**ARTICLE IV**
**TREATMENT OF CLASSES OF CLAIMS, INTERESTS,**
**AND UNCLASSIFIED CLAIMS OR INTERESTS**

**A.  Unclassified Claims**

**1.  United States Trustee Fees**

All fees payable by the Debtors under §1930 of Title 28 of the United States Code, together with any interest thereon pursuant to 31 U.S.C. 3717 that have not been paid prior to the Effective Date shall be paid by the Debtors on the Effective Date. In addition, the Debtors, or any successor thereto by merger, consolidation or otherwise, on or after the Effective Date, shall be liable for and the Disbursing Agent shall pay such fees and interest until the entry of a final decree in this case or until the case is converted or dismissed.  The Disbursing Agent shall file post-Confirmation operating reports with the Bankruptcy Court and the United States Trustee until final decree is entered.

2.    **Administrative Claims**

(a)    <u>**Generally.**</u>    Except as provided otherwise in this Article IV of the Plan, each holder of an Allowed Administrative Claim (including, without limitation, the compensation and expenses incurred by each Professional Person and allowed in a Final Order of the Bankruptcy Court) shall be paid in full, in Cash, by the Disbursing Agent (i) on the later to occur of the Effective Date or the date the order allowing such Administrative Claim becomes a Final Order, or (ii) upon such other terms as may exist in the ordinary course of business of the Debtors; or (iii) upon such terms as may exist pursuant to an Order of the Bankruptcy Court or an agreement between the holder of such Allowed Administrative Claim and the Debtors or Reorganized Debtors.

(b)    <u>**Administrative Expenses Incurred After Confirmation Date.**</u>

Administrative Claims representing obligations incurred by the Debtors after the Confirmation Date shall not be subject to application to the Bankruptcy Court and may be paid by the Reorganized Debtors in the ordinary course of business and without further Bankruptcy Court approval.  As more fully set forth herein, after the Confirmation Date, the Reorganized Debtors shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses of the Professional Persons employed by the Reorganized Debtors in connection with the implementation and consummation of this Plan, the claims reconciliation process and any other matters as to which such Professionals may be engaged.  The fees and expenses of such Professionals shall be submitted monthly to the Reorganized Debtors or the Creditors' Committee and the Office of the United States Trustee by such professionals in the form of a detailed invoice therefor, and shall be paid by the Disbursing Agent within ten (10) Business Days after such submission.  If the Reorganized Debtors dispute

the reasonableness of any such invoice within ten (10) days of receipt of such proposed fees, the Disbursing Agent shall timely pay the undisputed portion of such invoice, and the Reorganized Debtors, or the affected Professional may, after attempting to resolve the dispute, submit such dispute to the Bankruptcy Court for a determination of the reasonableness of such invoice.

### 3. Priority Tax Claims

Each holder of a Priority Tax Claim that has not been paid prior to the Effective Date shall be paid in full the Allowed Amount of its Priority Tax Claim over time as permitted by §1129(a)(9)(C) of the Bankruptcy Code. Specifically, the Reorganized Debtors shall pay the Allowed Amount of each Priority Tax Claim in 36 equal monthly installments commencing on the first day of the month following the Effective Date. The interest rate on the deferred payments shall be in accordance with applicable state law as required by §511 of the Bankruptcy Code.

### B. **Treatment of Allowed Class 1 Secured Claims**

Class 1 is impaired under the Plan. Commencing one (1) month from the Effective Date, the Reorganized Debtors shall pay each holder of an Allowed Class 1 Claim 50% of its Allowed Claim over a period of thirty-six (36) months from the Effective Date by making monthly payments until the 50% of the Allowed Amount is paid. By way of example, On Deck Capital, Inc. which has Allowed Class 1 Claim of $51,347.65 shall be entitled to receive $25,673.82 in thirty-six (36) equal monthly installments of $713.16. If Ciotti has a valid personal guaranty to any Class 1 Claimholder, Ciotti's guaranty will in no way be affected by the Plan and the Class 1 Claimholders are free to pursue Ciotti for any amounts unpaid to such Claimholders. The Class 1 Claimholders shall retain their Liens in the order of priority as existed prior to the Chapter 11 filings pending receipt of the Distributions under the Plan. Upon receipt of the 50% of the

Allowed Class 1 Claim, all liens against the Debtors' property shall be deemed discharged and the Reorganized Debtors are authorized to file an appropriate UCC-3 termination statement.

Class 1 Claimholders are impaired under the Plan and entitled to vote for or against the Plan.

**C.  Treatment of  Allowed Class 2 General Unsecured Claims**

Class 2 consists of all Unsecured Claims against the Debtors that are not entitled to priority under Bankruptcy Code §507(a), and that are not classified in any other Class.  Class 2 consists primarily of trade creditors who supplied goods and services to either Valdino Debtor or the Vbar 3 Debtor.  Class 2 also includes the SME Trustee's Unsecured Claim against Vbar 3 Debtor in the amount of $203,702.75 on account of monies advanced by SME to the Vbar 3 Debtor.  Class 2 does not include pre-petition unpaid rent to either the Valdino Debtor's landlord (approximately $48,000.00) or the Vbar 3 Debtor's landlord (approximately $60,000.00)[1]. The Debtors estimate the total Class 2 Claims are approximately $315,000.00.  The Claims in Class 2 are impaired and entitled to vote for or against the Plan.

Each Holder of an Allowed Class 2 Claim shall receive 30% of the Allowed Amount of their Class 2 Claim over a period of approximately thirty six (36) months from the Effective Date. Such payments shall be made on a monthly basis for the first year. The Reorganized Debtors shall make the first payment on the first day of the month following the Effective Date. The Reorganized Debtors estimate the monthly payments shall be approximately $2,500.00 per month in total to all Allowed Class 2 Claims.  On August 1, 2020, the Reorganized Debtors shall make an additional 10% Distribution to all holders of Allowed Class 2 Claims and a final Distribution of 10% on Ausgut 1, 2021.  The Reorganized Debtors shall be the Disbursing Agent

---

[1] These amounts are cure payments which the Bankruptcy Code mandates must be paid in full unless the landlord agrees otherwise as a condition of assuming the lease.

under the Plan and be responsible for all such Distributions to Holders of Allowed Class 2 Claims.

### D. **Treatment of Class 3 Insiders' Unsecured Claims**

Class 3 consists of the Unsecured Claims of Insiders. This inlcudes the following claims: (i) Vbar Enterprises LLC's Claim in the amount of $308,345.01 against the Vbar 3 Debtor, (ii) ERGC Enterprises, Inc.'s Claim in the amount of $93,477.90 against the Valdino Debtor, (iii) Vbar Enterprises LLC's Claim in the amount of $82,604.56 against the Valdino Debtor, (iv) Ozalp's Claim in the amount of $30,000.00 against the Vbar 3 Debtor and (v) SH's Claim in the amount of $24,680.00 against the Vbar 3 Debtor. Holders of Class 3 Claims shall receive  no payment or Distribution on account of Class 3 Claims and upon the Effective Date, all such Claims shall be deemed discharged pursuant to § 1141 of the Bankruptcy Code. Class 3 is deemed to reject the Plan but since the Class 3 Claimholders are also the Equity Interest Holders and retaining their Equity Interest in the Reorganized Debtors, Ciotti believes they support the Plan.

### E. **Treatment of Class 4 Equity Interests**

Class 4 consists of the Debtors' Equity Interest Holders. Ciotti through his 100% ownership of ERGC Enterprises, Inc. is the sole Equity Interest Holder in the Valdino Debtor. Ciotti controls the majority of the Equity Interest in Vbar 3 Debtor. Ozalp, SH, LLC, Paola Arinci, and AGC SRL control the equity which Ciotti does not own. The Plan provides that all Equity Interest Holders shall retain their Equity Interest in both the Valdino Debtor and the Vbar 3 Debtor as it existed prior to the Valdino Filing Date and Vbar 3 Filing Date. Other than retaining their Equity Interest in the Reorganized Debtors, the Class 4 Equity Interest Holders shall not be entitled to any other Distribution or payment on account of their Equity Interest.

## ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.  Treatment of Executory Contracts and Unexpired Leases**

In the event there are any Executory Contracts or unexpired leases that have not been either (a) assumed and assigned, or (b) rejected, all Executory Contracts and unexpired leases that exist as of the Confirmation Date between the Debtors and any Person shall be deemed assumed as of the Confirmation Date.  This includes the lease between 212 Front Street LLC and the Vbar 3, LLC dated January 15, 2013. The Reorganized Debtors shall pay the cure amount of $60,513.00 to 212 Front Street, LLC by making twenty four (24) monthly payments of approximately $2,500.00 per month in addition to the regular monthly rent.

## ARTICLE VI
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

**A.  Substantive of Consolidation**

This Plan constitutes a motion for approval of the proposed substantive of consolidation of the Valdino Debtor and Vbar 3 Debtor. Solely for the purposes specified in this Plan (including voting, confirmation, and distributions), (i) all assets and liabilities of the Debtors will be treated as though they were merged, (ii) all Intercompany Claims between the Debtors will be eliminated and (iii) each Claim filed against any of the Debtors or deemed filed against the Debtors by virtue of the Schedules of Assets and Liabilities will be one claim against the Debtors.

**B.  Source of Payments**

The funds necessary to make the initial Distributions required under the Plan shall be from cash on hand. The Distributions other than the Distributions on or about the Effective Date shall be made from funds generated from the operation of the Reorganized Debtors' businesses.

### C.  Management of Reorganized Debtor

The Reorganized Debtors shall be managed by Ciotti. Ciotti shall receive a yearly salary of $75,000.00.

### ARTICLE VII
### CONDITIONS PRECEDENT TO THE EFFECTIVENESS OF THE PLAN

The date on which all of the following conditions precedent have been fulfilled or waived shall be the Effective Date of this Plan.

(a)    The Confirmation Order must be in form and substance reasonably acceptable to the Debtors and shall have been entered and become a Final Order;

(b)    There shall have been no material adverse changes to Debtors' businesses.

### ARTICLE VIII
### PROCEDURES FOR RESOLVING AND TREATING CLAIMS

### A.  Resolution of Disputed Claims

Objections to Disputed Claims shall be filed with the Bankruptcy Court by the Debtors and served upon each holder of such Disputed Claims to which objections are made not later than sixty (60) days subsequent to the Effective Date.  Disputed Claims shall be divided into two (2) portions: the "non-disputed portion" and the "disputed portion."  The Disbursing Agent shall pay the non-disputed portion of a Disputed Claim in accordance with Plan provisions for payment of a Claim in its Class.

### B.  Estimation

The Debtors may, at any time, request that the Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtors have previously objected to such Claim.  The Court will retain jurisdiction to estimate any Claim at any time, including during litigation concerning any objection to such Claim.  In the event that the Court estimates any Disputed Claim, that estimated amount may constitute either the

Allowed Amount of such Claim, the amount on which a reserve is to be calculated for purposes of the Disputed Claims Reserve, or a maximum limitation on such Claim, as determined by the Court.  If the estimated amount constitutes a maximum limitation of such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

### C.  **Allowance of Disputed Claims**

Except as otherwise provided in this Plan, if, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall, within thirty (30) days after the date on which the Claim becomes an Allowed Claim, or as soon thereafter as is practicable, distribute from the Disputed Claims Reserve to the holder of such Allowed Claim (i) the amount of Cash that such holder would have been entitled to receive under this Plan if such disputed portion of such Claim had been an Allowed Claim on the Effective Date, which shall not exceed the amount of Cash reserved on account of such Claim.  Notwithstanding anything to the contrary contained in this Plan, the Disbursing Agent shall make a Distribution on the non-disputed portion of an Unsecured Claim in accordance with the provisions of the Plan.

## ARTICLE IX
## PROVISIONS CONCERNING CAUSES OF ACTION

The Reorganized Debtors shall retain all rights, claims and causes of action that may be commenced by the Debtors including their right to avoid preferential transfers and fraudulent transfers under §§547 and 548 of the Bankruptcy Code, respectively, or any other statute, law or rule.

# ARTICLE X
## PROVISIONS GOVERNING DISTRIBUTIONS

### A. **Disbursing Agent**

The Reorganized Debtors shall act as Disbursing Agent.  The Reorganized Debtors shall make the Disbursements required to be made after the Distributions made on the Effective Date.

### B. **Unclaimed Distributions**

Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Proofs of Claim filed by such holders unless no Proof of Claim has been filed, in which case then to the address set forth on the Schedules filed with the Court, unless superseded by a written notice to the Disbursing Agent providing actual knowledge to the Disbursing Agent of a change of address.

If any holder's Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Disbursing Agent is notified in writing of such holder's then current address, at which time all Distributions shall be made to such holder, without interest.

All Claims for undeliverable Distributions shall be made on or before the earlier of (i) with respect to the initial Distributions made on or after the Effective Date, one hundred and twenty (120) days after the date such undeliverable Distribution was initially made and (ii) with respect to the Distributions made subsequent to the Distribution made on the Effective Date, sixty (60) days after the date such undeliverable Distribution was initially made.  If any Claim for an undeliverable Distribution is not timely made as provided in the foregoing sentence, such Claim shall be forever barred.

### C. **Professional Fees and Expenses**

Each of the Professionals requesting compensation in the Chapter 11 Case shall file an application for an allowance of final compensation and reimbursement of expenses in the Chapter 11 Cases incurred through the Confirmation Date within thirty (30) days after the Confirmation Date.

### D. **Rounding**

Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect the rounding of such fraction to the nearest whole cent with the one-half cent being rounded up to the nearest whole cent.

## ARTICLE XI
## PROVISIONS CONCERNING DISCHARGE AND PROPERTY

### A. **Discharge of All Claims**

Except as otherwise provided by this Plan, the rights afforded in this Plan shall be in exchange for complete discharge and release of all Claims of any kind whatsoever arising prior to the Confirmation Date against the Debtors or any of the Debtors' assets or property; and except as otherwise provided herein, upon the Effective Date, all such Claims against the Debtors shall be satisfied, discharged and released in full; and all Claimants shall be precluded from asserting against the Debtors or their assets or property, any other or further claim based upon any act or omission, transaction or other activity of any kind or nature whether known or unknown, that occurred prior to the Confirmation Date.

### B. **Vesting of Property in the Reorganized Debtors**

Except as otherwise provided by this Plan, upon the Effective Date, title to all assets dealt with by this Plan shall pass to the Reorganized Debtors free and clear of all Claims in accordance with Section 1141 of the Bankruptcy Code.

## ARTICLE XII
## "CRAM DOWN"

In the event Classes of Claims or Interests do not vote to accept the Plan, the Debtors will invoke the "Cram Down" provisions of Bankruptcy Code §1129(b).  In that event, the Debtors reserve the right to modify the Plan to the extent, if any, the confirmation of the Plan under §1129(b) of the Bankruptcy Code requires modification.

## ARTICLE XIII
## RETENTION OF JURISDICTION

Following Confirmation, except as provided below, the Bankruptcy Court may retain such jurisdiction as is legally permissible after Confirmation, including, without limitation, for the following purposes:

1.      To hear and determine any dispute relating to the Plan or any property described in the Plan and to enforce its provisions.

2.      To hear and determine all issues arising out of any motions, applications, adversary proceedings or contested or litigated matters in the Chapter 11 Cases pending at the Confirmation Date or commenced thereafter.

3.      To order recovery of any assets of the Debtors, whether title is presently held in the name of the Debtors or a third party.

4.      To hear and determine motions to approve the sale of assets of the Debtors under Section 363 of the Bankruptcy Code and/or the rejection or affirmance of executory contracts under Section 365 of the Bankruptcy Code.

5.      To hear and determine all issues relating to any purchases, sales or contracts made or undertaken by the Debtors during the pendency of the Chapter 11 Cases.

6.      To hear and determine all Claims arising from the rejection of executory contracts or unexpired leases.

7.      To hear and determine all objections to Claims and all controversies concerning classification, allowance, valuation, liquidation, estimation, or satisfaction of Claims.

8.      To make orders allowing amendment of the Schedules of Assets and Liabilities filed in the Chapter 11 Cases for any purpose including, without limitation, to perfect objections to Claims not previously listed as disputed, contingent or unliquidated.

9.      To hear and determine all applications for compensation of professional and similar fees and reimbursement of expenses arising out of or relating to the case or any Claims.

10.     To consider and order any modifications or amendments requested to the Plan.

11.     To remedy any defect or omission or reconcile any inconsistency in the Plan or the Confirmation Order in such manner as may be necessary or desirable to carry out the purposes and intent of the Plan.

12.     To enforce all orders previously entered by the Bankruptcy Court.

13.     To determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the Bankruptcy Code.

## ARTICLE XIV
## NOTICES

Except as otherwise herein provided, all notices required to be made in or under the Plan shall be in writing and shall be mailed by registered or certified mail, return receipt requested:

If to the Debtors:             Vbar 3, LLC
                               229 Sullivan Street, 5B
                               New York, New York 10012
                               Attn: Enrico Ciotti

                               Caffe Valdino, Inc.
                               229 Sullivan Street, 5B

New York, New York 10012
Attn: Enrico Ciotti

With a copy to:              Tarter Krinsky & Drogin LLP
1350 Broadway, 11th Floor
New York, New York 10018
Attn: Scott S. Markowitz, Esq.

Any person may change the address at which he is to receive notices for purposes of this Plan by sending written notice pursuant to this provision to the Debtors. Furthermore, notice shall be given to all of the above and their successors.

## ARTICLE XV
## MISCELLANEOUS PROVISIONS

### A. Applicable Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights and obligations arising under this Plan are governed under New York Law.

### B. Unenforceability of Particular Provisions

Should any provision in this Plan be determined to be unenforceable in whole or in part, such determination shall in no way limit or affect the enforceability and operative effect of the remainder of this Plan, including any of its provisions to the extent not determined to be unenforceable.

### C. Revocation and Withdrawal Prior to Confirmation

The Debtors reserve the right to revoke and withdraw this Plan prior to the Confirmation Date. If the Debtors revoke or withdraws this Plan, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void, and in such event nothing contained herein shall be deemed to constitute a waiver or release of any claim by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any entity in any further proceedings involving the Debtors.

### D.  **Amendment and Modification**

The Debtors may propose amendments to, or modification of, this Plan at any time at or before Confirmation.  After Confirmation of the Plan, the Debtors may, with the approval of the Bankruptcy Court and so long as it does not materially adversely affect the treatment of any Claim or Equity Interest, amend the Plan to remedy any defect or omission or reconsider any inconsistencies in the Plan or in the order of Confirmation as necessary or desirable to carry out the purpose and effect of the Plan.

### E.  **Successors and Assigns**

The rights, duties and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

### F.  **Binding Effect of Plan**

Upon the Confirmation Date, all of the provisions of the Plan shall be binding on the Debtors, on all Creditors, on all Equity Interest Holders, and on all other entities who are affected (or whose interests are affected) in any manner by this Plan.

Dated:  New York, New York
         May 23, 2019

**VBAR 3, LLC**                                        **TARTER KRINSKY & DROGIN LLP**
*Debtor and Debtor-in-Possession*          *Attorneys for Vbar 3, LLC and Caffe Valdino, Inc.*
                                                             *Debtor and Debtor-in-Possession*


By:/s/ Enrico Ciotti _____       By:/s/ Scott S. Markowitz _____
        Enrico Ciotti                                           Scott S. Markowitz, Esq.
        President                                               1350 Broadway, 11th Floor
                                                                   New York, New York 10018
                                                                   Tel: (212) 216-8000
                                                                   Email: smarkowitz@tarterkrinsky.com

**CAFFE VALDINO, INC.**
*Debtor and Debtor-in-Possession*


By:/s/ Enrico Ciotti
        Enrico Ciotti
        President